THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BETSY FUMELUS,<br><br>      Plaintiff,<br><br>      v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and DIAMOND RESORTS,<br><br>      Defendants. | Civil Action No. 18-10237<br><br>**OPINION** |
| SANDY ESPERANCE,<br><br>      Plaintiff,<br><br>      v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and DIAMOND RESORTS,<br><br>      Defendants. | Civil Action No. 18-10248<br><br>**OPINION** |

APPEARANCES:

THE KIM LAW FIRM, LLC
By: Richard H. Kim, Esq.
1500 Market Street, Suite W-3110
Philadelphia, Pennsylvania 19102
      Counsel for Plaintiffs

COOPER LEVENSON, P.A.
By:  William S. Donio, Esq.
     Yolanda N. Melville, Esq.
1125 Atlantic Avenue— 3rd Floor
Atlantic City, New Jersey 08401
        Counsel for Defendant Diamond Resorts

**BUMB, UNITED STATES DISTRICT JUDGE:**

Plaintiffs, sisters Betsy Fumelus and Sandy Esperance, bring these Fair Credit Reporting Act suits against Experian Information Solutions, Inc., a credit reporting agency, and Diamond Resorts, a credit information furnisher.[1] Presently before the Court are Diamond Resorts' motions, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' claims that Diamond Resorts willfully and negligently violated 15 U.S.C. § 1621s-2(b) (Count Two of the Amended Complaints).[2] For the reasons

---

[1] "A 'furnisher' of information is an entity, often a creditor, that furnishes information regarding a consumer to one or more consumer reporting agencies for inclusion in a consumer report. 16 C.F.R. § 660.2(c)." Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs., 696 F. App'x 87, 90 (3d Cir. 2017).

[2] Plaintiffs, who are represented by the same attorney, filed two separate suits. It is not apparent to the Court that two separate suits were necessary. Indeed, the Amended Complaints are identical except for Plaintiffs' names and addresses. Plaintiffs' counsel asserts that there are "distinguishing factors" between the two cases, "such as damages along with what (if anything) [Diamond Resorts] did to investigate the alleged inaccuracies" on Plaintiffs' credit reports. [Opposition Brief, p. 5 n.3] The asserted distinguishing factors are not implicated by the instant Motions to Dismiss, which test the sufficiency of the factual averments made in the Amended Complaints.

2

stated herein, the motions will be denied.

**I.**

The underlying debt at issue is a mortgage note for a timeshare in both Plaintiffs' names. (Amend. Compls ¶ 11 n. 1) The Amended Complaints assert that Defendants Experian and Diamond Resorts "repeatedly reported" three inaccuracies concerning the debt. (Id. ¶ 7)

Allegedly, Diamond Resorts furnished false information stating that: (1) Plaintiffs' "financing obligations are owed to [Diamond Resorts] instead of Tempus Palms"; (2) "the tradeline is 'open' when [Diamond Resorts] has already represented that the tradeline was 'charged off'"; and (3) the outstanding balance on the debt is greater than it actually is. (Amend. Compls ¶¶ 9-11) All three of these alleged inaccuracies allegedly appeared, repeatedly, on Plaintiffs' Experian credit reports. (Id. ¶ 12)

Plaintiffs allege that they "disputed the inaccurate information with both [Experian] and [Diamond Resorts]" (Amend. Compls ¶ 12), but the "Defendants continue to report the inaccurate information." (Id. ¶ 13)

**II.**

On a Rule 12(b)(6) motion, the Court must decide whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating plausibility, the Court "disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Hassen v. Gov't of V.I., 861 F.3d 108, 114–15 (3d Cir. 2017) (internal citations and quotations omitted).

### III.

Diamond Resorts' various arguments in support of its Motions to Dismiss may be distilled into two: (A) the claims against it fail because the Amended Complaints do not plead that Diamond Resorts received a notice of dispute from Experian, which Diamond resorts asserts is an "essential element" of a § 1681s-2(b) claim; and (B) the information that Diamond Resorts furnished was accurate.

### A.

Diamond Resorts is correct that it can only be *liable* under § 1681s-2(b) if it received a notice from Experian, rather than receiving a dispute directly from Plaintiffs. SimmsParris v. Countrywide Financial Corp., 652 F.3d 355, 358 (3d Cir. 2011) ("Notice under § 1681i(a)(2) must be given by a credit reporting

4

agency, and cannot come directly from the consumer."); see also Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs., 696 F. App'x 87, 91 (3d Cir. 2017) ("A consumer may certainly notify a furnisher/creditor directly about his dispute but there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute.") (citing SimmsParris). But it does not necessarily follow-- as Diamond Resorts asserts-- that Plaintiffs must explicitly *plead* that Experian notified Diamond Resorts of Plaintiffs' disputes. The FCRA, 15 U.S.C. § 1681i(a)(2), requires all credit reporting agencies, upon receiving a consumer dispute, to notify the furnisher of the alleged inaccurate information. Therefore, at the pleadings stage, the Amended Complaints' allegation that Plaintiffs disputed the alleged inaccuracies with Experian (Amend. Compls ¶ 12) is sufficient. In light of the fact that Experian had statutory duty to notify Diamond Resorts about the Plaintiffs' disputes, Plaintiffs have a good faith basis to presume that Experian complied with the FCRA and in fact notified Diamond Resorts of Plaintiffs' disputes.

In this regard, this case is indistinguishable from Himmelstein v. Comcast of the Dist., L.L.C., 931 F. Supp. 2d 48, 53 (D.D.C. 2013) which comprehensively discusses this issue. In that case, as in this case, the defendant furnisher argued that a plaintiff asserting a § 1681s-2(b) claim must specifically

plead that the credit reporting agency notified the furnisher of the disputed credit information. The Court rejected that argument, explaining,

> [i]n arguing that the case should be dismissed because Plaintiff alleged that he directly notified [the furnisher], Defendant is asking the Court to ignore the . . . allegation that he also contacted the national credit bureaus. This latter assertion is the critical one. Under § 1681s-2(b), a furnisher's duties to investigate disputes and correct erroneous information are triggered "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title." Id. (emphasis added). Section 1681i(a)(2), moreover, requires that a [credit reporting agency] that receives notice from a consumer of a disputed debt "shall provide notification of the dispute to any furnisher . . . including all relevant information regarding the dispute" within "the 5-business-day period beginning" when the CRA receives such notice. As a result, the only allegation missing from Plaintiff's Amended Complaint is that the national credit bureaus fulfilled their legal responsibility to notify [the furnisher]. The Supreme Court, however, has held: "The law . . . , however, presumes that every man, in his private and official character, does his duty, until the contrary is proved; and it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption. . . ." Bank of United States v. Dandridge, 25 U.S. 64, 69–70, 12 Wheat. 64, 6 L.Ed. 552 (1827); see also Cincinnati, N.O. & T.P. Ry. Co. v. Rankin, 241 U.S. 319, 327, 36 S.Ct. 555, 60 L.Ed. 1022 (1916) ("It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the Federal statutes or become subject to heavy penalties, and ... in respect of transactions in the ordinary course of business, ... it is entitled to the presumption of right conduct.").
>
> The Court can see no reason why, given that Plaintiff is entitled to all inferences that can be derived from the Complaint, he is not entitled to this long-held,

> fundamental presumption. While Defendant may certainly introduce evidence at summary judgment that shows such notice did not actually occur, at this stage the Court is bound to grant Plaintiff the presumption that the credit bureaus complied with the FCRA and in fact notified [the furnisher] of the disputed debt.

Himmelstein, 931 F. Supp. 2d at 54–55. Consistent with the Himmelstein Court's reasoning, several other courts have also concluded that a pleading need not specifically allege that a furnisher received the statutorily-created and required notice from a credit reporting agency. See, e.g., Rayburn v. Equifax Information Services, LLC, 2019 WL 1225212 (N.D.Ga. 2019) (citing Himmelstein, among other authorities); Pleznac v. Equity Residential Mgmt, LLC, 320 F. Supp. 3d 99 (D.D.C. 2018) (citing Himmelstein); Owens v. Central Trust Bank, 2014 WL 5716762 (W.D. Mo. 2014) (citing Himmelstein, among other authorities); Fishback v. HSBC Retail Services, Inc., 944 F. Supp.2d 1098, 1112-1113 (D.N.M. 2013); Watson v. Trans Union Credit Bureau, et al., 2005 WL 995687 at *5 (D. Maine 2005); Sullivan v. Equifax, Inc., 2002 WL 799856, at *2 (E.D. Pa. Apr. 19, 2002) ("at this stage, the allegations are sufficient to state a violation of § 1681s–2(b). Should discovery reveal that [the furnisher] never received notice of the dispute from a credit reporting agency, [the furnisher] will be permitted to renew its motion to dismiss the FCRA claim."); Jaramillo v. Experian Info. Sols., Inc., 155 F. Supp. 2d 356, 363 (E.D.Pa. 2001) ("When he filed this

7

complaint, Mr. Jaramillo could not have known whether [the credit reporting agencies] had forwarded the inaccurate information to [the furnisher], pursuant to 1681i(a)(2). When this information is provided to plaintiff in discovery, it will become clear whether Mr. Jaramillo has a cause of action against [the furnisher], or solely against the credit reporting agencies.").[3]

If, at summary judgment, Diamond Resorts produces evidence that it did not, in fact, receive notice from Experian concerning Plaintiffs' disputes, then Diamond Resorts may well prevail. However, at the pleadings stage, the allegation that Plaintiffs notified Experian, combined with the legal presumption that Experian complied with its FCRA duty to notify Diamond Resorts, is sufficient to state a claim for relief under § 1681s-2(b).

**B.**

Relying on a document outside the pleadings-- namely the Certification of Corrine Gaxiola -- Diamond Resorts asserts that the debt at issue is, indeed, owed to Diamond Resorts, because "Tempus Palms International Ltd. is a wholly-owned subsidiary of

---

[3] Diamond Resorts relies on Jaramillo in both its moving and reply briefs. Jaramillo, however, does not support Diamond Resorts' position; as to this issue, the motion to dismiss in Jaramillo was denied. 155 F. Supp. 2d at 363 ("At this stage, however, National City's motion to dismiss Mr. Jaramillo's FCRA claim must be denied.").

8

Diamond [Resorts]," Gaxiola Cert. ¶ 4, and therefore, according to Diamond Resorts, the reporting of the debt as owed to Diamond Resorts was accurate. (Reply Brief, p. 6) This argument also fails at the pleadings stage of the case. The Court cannot rule on this issue on a motion to dismiss. See Fed. R. Civ. P. 12(d).[4]

Plaintiffs dispute that the debt is owed to Diamond Resorts. At this early stage of the litigation--i.e., before discovery has commenced-- the Court expects that Plaintiffs have a good faith basis for their allegation, as the mortgage notes attached to the Gaxiola Certification identify the lender as "Tempus Palms International, Ltd."[5], and all pleadings must be

---

[4] Diamond Resorts relies on the Gaxiola Certification in an attempt to undermine and disprove an allegation made in the Amended Complaints. Thus, contrary to Diamond Resorts' assertion, the claim at issue is not "based upon" the Gaxiola Certification (Moving Brief, p. 7 n.3), and therefore the certification cannot be considered on a motion to dismiss. Moreover, the Court declines (somewhat reluctantly) to convert the motion to dismiss into a motion for summary judgment. The interests of judicial economy would not be served by doing so. Plaintiffs assert three theories of FCRA liability. Diamond Resorts' argument in this regard implicates only one of three theories.

[5] In one sentence in its reply brief, Diamond Resorts seems to imply that Plaintiffs must know that the debt is owed to Diamond Resorts, and not Tempus Palms, because Plaintiffs "decided to file this lawsuit against Diamond rather than Tempus Palms." (Reply Brief, p. 7) This argument ignores the distinction between the furnisher of information and the creditor on the debt. As the Third Circuit has observed, a "furnisher of information" under the FCRA is "*often* a creditor," Harris, 696 F. App'x at 90 (emphasis added), but it does not

9

filed in compliance with Fed. R. Civ. P. 11. If, however, discovery demonstrates that the debt is actually owed to Diamond Resorts, the Court expects that Plaintiffs will not pursue this theory of liability further.

Lastly, as to the other two theories of liability-- that Diamond Resorts inaccurately reported to Experian the status of, and outstanding balance on, the account-- Diamond Resorts asserts that "Plaintiff has not sustained her burden of proving[6] that the information reported was not technically accurate as required by the FCRA." (Moving Brief, p. 21) (see also, Reply Brief, p. 8) Diamond Resorts misstates the legal standard at this juncture. Plaintiffs must plead facts supporting a conclusion that Diamond Resorts furnished incomplete or inaccurate information to Experian. See Seamans v. Temple

---

have to be. See 16 C.F.R. § 660.2(c) ("Furnisher means an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."); see, e.g., Williams v. Equifax Info. Servs., Inc., 2018 WL 4510524, at *12 (N.D. Ala. Sept. 20, 2018) ("Because LexisNexis, and not Capital One, provided Equifax with the information about Capital One's judgment against plaintiff, Capital One cannot be considered a 'furnisher of information' for the purposes of plaintiff's FCRA claim, and it cannot be held responsible for failure to follow any of the investigatory and reporting procedures set forth in 15 U.S.C. § 1681s-2(b)(1)."). Thus, it is possible that Diamond Resorts furnished the allegedly inaccurate information concerning a debt owed to the creditor, Tempus Palms, as the Amended Complaints allege.

[6] At the pleadings stage, and in response to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs are not required to "prove" anything, nor must they put forward any

University, 744 F.3d 853, 866-67 (3d Cir. 2014) ("15 U.S.C. § 1681s-2(b) . . . requires complete and accurate post-dispute reporting of debts."); see also, Coulter v. Pennsylvania Higher Educ. Assistance Agency, 2018 WL 2216205, at *3 (E.D. Pa. May 15, 2018) ("to the extent that Coulter alleges in paragraphs 23, 25, and 28 of the Complaint that PHEAA failed to fulfill its responsibility to provide a 'complete and accurate post-dispute reporting of debts,' Coulter has properly alleged claims under § 1681s-2(b), and PHEAA's Motion to Dismiss is denied.") (quoting Seamans). The Amended Complaints allege that Diamond Resorts reported the account as "open" when it was actually "charged off", and reported that the loan balance was "$10,883" when it was really "$8,037.97." (Amend. Compls ¶ 10, 11) These allegations plausibly support a conclusion that Diamond Resorts furnished inaccurate information.

As to the loan balance reporting, Diamond Resorts disagrees, asserting that the alleged discrepancy between $10,883 and $8,037.97 alone cannot support a plausible conclusion that it furnished inaccurate information because the $10,883 figure was allegedly reported by Diamond Resorts in January 2018, and the $8,037.97 figure allegedly appeared in a July 22, 2018 invoice. (Amend. Compls ¶ 11) According to Diamond Resorts, Plaintiffs could have "made payments toward the

---

evidence.

loan since January 2018, which could plausibly explain the newer balance of $8,037.97." (Reply Brief, p. 9)  Although discovery may prove Diamond Resorts' point, the argument ignores the Amended Complaints' allegation that "Plaintiff had not made payments toward [the debt] in approximately two years"  (Amend. Compls ¶ 10)-- again, an allegation the Court expects was made in good faith-- which, in turn, forecloses the possibility that interim payments were made.  Thus, the Court holds that the Amended Complaints plead sufficient facts to sustain a plausible conclusion that Diamond Resorts furnished inaccurate information.

**IV.**

For the above-stated reasons, Diamond Resorts' Motion to Dismiss Count 2 of the Amended Complaints will be denied.  An appropriate Order accompanies this Opinion.


Dated:  April 5, 2019                    ___s/ Renée Marie Bumb____
                                         Renée Marie Bumb, U.S.D.J.